# WIN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:09-cr-00067-W

| UNITED STATES OF AMERICA, | ) |   |
|---|---|---|
| Plaintiff, | ) |   |
| vs. | ) | ORDER |
| ANTHONY L. JINWRIGHT, | ) |   |
| Defendant. | ) |   |

THE MATTER is before the Court on Defendant's Motion to Dismiss or Alternatively to Suppress Evidence Due to Grand Jury Abuse (Doc. No. 13),[1] as well as the supplemental briefs of the parties on that motion (Docs. Nos. 39, 40). Additionally, the Court held an evidentiary hearing on October 8, 2009, where the parties presented evidence and the Court received oral argument on the motion at bar. In its original motion[2], as well as its supplemental brief submitted after the hearing, Defendant seeks to suppress evidence obtained as a result of alleged grand jury abuse and harassment by the Government. For the reasons that follow, Defendant's motion is DENIED.

FINDINGS OF FACT

1.  Defendant Anthony L. Jinwright (hereinafter, "Defendant") has been employed as the senior pastor at Greater Salem Church, located in Charlotte, North Carolina, since before 2002.

---

[1] In a ruling following an evidentiary hearing, the Court denied that portion of Defendant's motion seeking to dismiss the case for alleged grand jury abuse, and the Court sees no need to further discuss its ruling on that issue. (Doc. No. 35). Thus, the sole remaining issue before the Court is the alternative relief sought in the motion, to wit: suppression of the evidence.

[2] Notably, Defendant provided absolutely no case law to support the arguments contained in the original motion.

Defendant owns and operates AL JINWRIGHT Funeral Services and is the founder of AL Jinwright Ministries.

2. Defendant Harriet P. Jinwright, who is not a party to the instant motion, has been employed by Greater Salem Church since before 2002. Mrs. Jinwright also served as an officer of and was responsible for business finances for AL JINWRIGHT Funeral Services.

3. The Grand Jury returned a federal Bill of Indictment on April 21, 2009, charging Defendant with five counts of tax evasion for the years 2002-2006, five counts of filing a false tax return during the 2002-2006 period, false statements to federal agents, and three counts of mail fraud related to the lease of three vehicles.

4. Although the Indictment was returned against Defendant, the Grand Jury continued to investigate Defendant and sought to gather additional information concerning possible charges against Defendant for mail fraud, tax evasion for 2007, and filing a false tax return for 2007. The Grand Jury was also investigating Defendant's wife, Harriet P. Jinwright.

5. On August 28, 2009, the Grand Jury issued two subpoenas: (1) to Bruce Julian Clothiers seeking production of records of financial transactions and correspondence related to clothing purchases made by Defendant, his wife, and his daughter for the time period of January 1, 2001, through the present ("Clothing Records"); and (2) to Greater Salem Church seeking production of all media recordings including sermon recordings, television recordings and radio recordings relative to Greater Salem Church, Greater Salem City of God, and Greater Salem at the Lake for the years 2006-2009 ("Sermon Recordings") (collectively with the Clothing Records, the "Evidence").

6. Bruce Julian Clothiers never sought to quash the subpoena for the Clothing Records.

7. On September 14, 2009, Greater Salem Church, through its attorney, moved to quash the subpoena issued by the Grand Jury and served on the church for the Sermon Recordings. The Government responded and also submitted, ex parte, the affidavit of Tyiesha Nixon, Special Agent with the Internal Revenue Service Criminal Division.

8. Defendant's instant motion has raised issues that can only be addressed in full by the unsealing of the motion to quash and related responsive documents contained in 3:09-mc-163. Additionally, the church has complied with the subpoena at issue in that case, and the Grand Jury subsequently returned an indictment. Furthermore, at the hearing on the instant motion, the Government acknowledged that a summary of the contents of Agent Nixon's affidavit were contained in the Government's response to Defendant's motion at bar, and the Government also stated that it would make the affidavit concerning the motion to quash available to Defendant's counsel. The Court, therefore, finds no compelling reason to keep that case sealed, particularly where the substance of that case is relevant to the issue now before the Court. A fully disclosed record is appropriate and necessary to resolution of the motion. The Court hereby unseals case 3:09-mc-163 and all pleadings therein, including the affidavit submitted ex parte. See generally Fed. R. Crim. Pro. 6(e).

9. Agent Nixon's affidavit, which was part of the Government's response to the motion to quash, indicated that the Sermon Recordings may show additional evidence of income that Defendant and his wife, Harriet P. Jinwright received but did not report on their income tax returns. Specifically, the affidavit indicted that "on some occasions, the Jinwrights may have even threatened to bar the church doors until certain financial thresholds set by the Jinwrights were met."

10. Agent Nixon's affidavit also stated that prior to serving the subpoena on September 9, 2009, the Government had received approval from the United States Department of Justice, Tax Division to charge Defendant with tax evasion and filing a false tax return for the year 2007, as well as charges against Defendant's wife, Harriet P. Jinwright for tax evasion and filing false tax returns for the years 2002-2007. Additionally, the Government obtained approval to charge both Defendant and his wife with conspiracy to commit tax evasion and fraud and false statements.

11. Although Defendant argues the subpoena was issued to obtain evidence for trial, Defendant has presented no evidence to contradict the affidavit of Agent Nixon. Therefore, the Court finds, as a matter of fact, that the subpoena issued to Greater Salem Church was issued for a legitimate and appropriate purpose.

12. After the motion to quash was filed, the Government subsequently narrowed the subpoena's scope to encompass only 2007 Sermon Recordings.

13. Following an evidentiary hearing on September 15, 2009, the Court denied the motion to quash.

14. The parties agree that Greater Salem Church provided the subpoenaed information to the Grand Jury on September 16, 2009.

15. On September 16, 2009, the same day the subpoenaed Sermon Recordings from the church were produced, the Grand Jury returned a Superseding Bill of Indictment that included all prior charges, but also added the following charges against Defendant: (1) conspiracy to defraud; (2) tax evasion for the year 2007; (3) filing a false tax return for the year 2007; and (4) two counts of mail fraud related to the lease of two vehicles. Additionally, thirteen

charges against Defendant's wife, Harriet P. Jinwright were added, including a conspiracy to defraud charge, six counts for tax evasion for the years 2002-2007, and six counts of filing a false tax return for the years 2002-2007.

ANALYSIS

Here, Defendant argues the Government inappropriately sought and obtained the Evidence for the sole or dominant purpose of procuring trial discovery rather than for the purpose of seeking an indictment. The standard of review for Defendant's motion is well-settled:

> We recognize the "universal rule that prosecutors cannot utilize the grand jury solely or even primarily for the purpose of gathering evidence in pending litigation." United States v. Moss, 756 F.2d 329, 332 (4th Cir.1985). Therefore, once a criminal defendant has been indicted, the Government is barred from employing the grand jury for the "sole or dominant purpose" of developing additional evidence against the defendant. Id. (internal quotation marks omitted). However, a " 'presumption of regularity attaches to a grand jury's proceedings,' " id., and [the movant] bear[s] the burden of rebutting the presumption. The Government is allowed to make a good-faith inquiry into charges that are not covered in the indictment, "even if it uncovers further evidence against an indicted person." Id. (internal quotation marks omitted).

United States v. Brothers Const. Co. of Ohio, 219 F.3d 300, 314 (4th Cir. 2000); see also United States v. Neely, 76 F.3d 376, 1996 WL 60329 (4th Cir. 1996) (unpublished); United States v. Foggo, 2008 WL 2777009 (E.D.Va. 2008) (unpublished); United States v. Apperson, 441 F.3d 1162, 1189 (10th Cir. 2006). In order to prove an improper "sole or dominant purpose" for issuing the subpoena, Defendant carries a heavy burden. See United States v. R. Enters, Inc., 498 U.S. 292, 298-302 (1991) (noting that a "strong showing to the contrary" is necessary to overcome the presumption that grand jury acts within its authority); United States v. Mechanik, 475 U.S. 66, 75 (1986) (O'CONNOR, J., concurring in judgment) ("The grand jury proceeding is accorded a presumption

of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process.").

## A. Clothing Records

First, as to the evidence concerning Defendant's Clothing Records, Defendant argues that such evidence was obviously gathered for trial purposes because at the time the subpoena was issued, Defendant was already under indictment for tax offenses related to those years.[3] Therefore, according to Defendant, the evidence was unnecessary to the grand jury's investigation, and thus was gathered solely for trial preparation purposes. The Government responds, noting that after Defendant was originally indicted, the investigation of additional charges against Defendant and new charges against a second Defendant were being pursued. The evidence before the Court on the Greater Salem Church's motion to quash supports this claim, particularly the affidavit of Agent Nixon, even though such evidence did not directly pertain to the Clothing Records. Furthermore, following submission of the subpoenaed Clothing Records to the grand jury, which included evidence concerning an additional defendant, a Superseding Bill of Indictment was returned, adding two new tax charges, two additional mail fraud charges, and a conspiracy count against Defendant. Additionally, thirteen charges against Defendant's wife, a new defendant, were also added, including charges for tax fraud during those years covered by the Clothing Records.

Our sister district, the Eastern District of Virginia, recognized that where the Government makes a representation that an investigation is ongoing such that additional counts or additional

---

[3] While Defendant does not re-assert his argument in this supplemental motion that the clothing records are irrelevant to a tax fraud prosecution, Defendant argued the relevancy of the clothing records in the original motion to dismiss (Doc. No. 13, p. 4, ¶ 12). To the contrary, it is well-settled law that "[i]n a tax case, much effort is devoted to proof of an opening net worth, to the tax treatment of each and every source and application of funds during the taxable years in question, and to the closing net worth." B. Frederic Williams, Jr., and Frank D. Whitney, Federal Money Laundering: Crimes and Forfeitures, § 4.4.3.2, p. 87, (1999).

defendants may be added, it cannot be said that the *sole or primary* motivating factor of the grand jury subpoena is to gather evidence on charges pending from an existing indictment. United States v. Crosland, 821 F. Supp. 1123, 1127 (E.D.Va. 1993) (citing Moss, 756 F.3d at 232). Furthermore, it is widely recognized that:

> [W]here the primary purpose of the investigation is to determine whether others not indicted were involved in the same criminal activity, or whether the indicted party committed still other crimes, the government may go forward with the inquiry even though one result may be the production of evidence that could then be used at the trial of the pending indictment. Also, prior to indictment, nothing prevents the prosecution from bringing before the grand jury evidence that will fully explore the case, beyond what is needed for probable cause, although one consequence is to better prepare the prosecution for trial on the indictment it hopes the grand jury will issue.

3 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure § 8.8(f) (3d ed.2007) (citations omitted). Similarly, here, the record clearly indicates that at the time the Clothing Records subpoena was issued, the Government was pursuing additional charges and an additional defendant. Accordingly, Defendant has not shown that the Government's sole or dominant purpose for issuing the Clothing Records subpoena was to obtain evidence for trial. The fact that the Clothing Records provide additional evidence against Defendant on charges for which he had already been indicted does not change this result.

### B. Sermon Recordings

Turning to the Sermon Recordings, this is not the first time the Court has been confronted with the argument that the subpoena seeking this information was issued for improper purposes as a discovery device. When the subpoena for the Sermon Recordings was first served, the party subpoenaed – Greater Salem Church – sought to quash the subpoena. As one of its reasons in support of its motion, the Church argued that the information was being sought solely for the purpose

of gathering evidence for trial. Following a hearing and after reviewing the Government's affidavit setting forth its reasons for issuance of the subpoena, the Court denied the motion to quash. In so doing, the Court rejected the argument that the information was being sought for trial purposes. In rejecting the church's argument, the Court implicitly ruled that the Government sufficiently demonstrated a legitimate purpose for subpoenaing the Sermon Recordings from the outset.

Here, in support of its argument concerning the Sermon Recordings, Defendant relies primarily on the fact that this evidence was produced to the jury only hours before a supplemental indictment was returned. Defendant contends that there was insufficient time between the production of the Sermon Recordings and the issuance of the superceding indictment to allow for the grand jury to review the evidence. It is this temporal proximity upon which Defendant's accusations of grand jury abuse and harassment hinge. Defendant, however, cites no cases supporting such an argument. The Government, however, located a few cases out of the Southern District of New York that have considered the temporal proximity argument and rejected it: United States v. Long, 697 F. Supp. 651 (S.D.N.Y. 1988) (rejecting claim of grand jury abuse where subpoenas were returnable within two days of the indictment and a witness was called before the grand jury after indictment); United States v. Ahn, 1995 WL 217557, *1 (S.D.N.Y. April 13, 1995) (unpublished) (denying motion to quash subpoena filed post-indictment and noting, "There is nothing about the timing concerning the subpoena's issuance which suggests that the Government explanation is incorrect."). Notably, in the Long case, the court identified some instances where the timing of the subpoena might suggest an improper purpose, including grand jury subpoenas issued during trial, following a mistrial and prior to retrial, or after an investigation had become inactive. 697 F. Supp. at 658 (citations omitted). None of those instances are found in the facts are bar.

Other than the temporal proximity argument, there are no objective indicia that trial preparation was the "sole and dominant purpose" of the grand jury subpoena for Sermon Recordings. To the contrary, the record before the Court indicates that the Sermon Recordings were subpoenaed as part of a continuing, ongoing grand jury investigation, and this evidence was relevant to such investigation. Defendant has failed to show otherwise. It is reasonable to infer that upon return of the subpoenaed Sermon Recordings, the grand jury reviewed some portions of the evidence in the hours before it issued the superseding indictment. Furthermore, Defendant concedes that there is no legal requirement that a grand jury must review any and all evidence it receives from its subpoenas prior to issuing an indictment. See Defendant's Supplemental Brief Regarding Suppression of Evidence, Doc. No. 40, p. 6 (filed October 22, 2009).

## Conclusion

Based upon the foregoing, the Court concludes as a matter of law that no grand jury violation occurred in the issuance of the Subpoenas. Therefore, Defendant is not entitled to suppression of the evidence. The United States Supreme Court has noted the broad investigatory powers of the grand jury: "'A grand jury's investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.'" United States v. Dionisio, 410 U.S. 1, 13 (1973) (quoting United States v. Stone, 429 F.2d 138, 140 (2d Cir.1970)). In regards to both the Clothing Records evidence and the Sermon Recordings evidence, Defendant has failed to satisfy his burden of showing that the "sole or dominant purpose" for issuance of the subpoenas was trial preparation. Instead, the Government has provided a sufficient basis to show that the subpoenas for the Evidence were issued as part of an ongoing grand jury investigation and, therefore, for a legitimate purpose.

IT IS THEREFORE ORDERED that case number 3:08-mc-163 is hereby UNSEALED and Defendant's Motion to Suppress (Doc. No. 13) is DENIED. Moreover, for the reasons stated in the oral ruling issued in open Court following a hearing on October 8, 2009, Defendant's motions to dismiss (Doc. No. 15, 16) are DENIED.

IT IS SO ORDERED.

Signed: January 6, 2010

Frank D. Whitney
United States District Judge