UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:09-cr-00067-W

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| ANTHONY L. JINWRIGHT, | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court on Defendant's Motion for Bond (Doc. No. 98), filed May 28, 2010. The Government responded in opposition (Doc. No. 99) on June 7, 2010, to which Defendant replied (Doc. No. 100) on June 9, 2010. Defendant subsequently submitted the Affidavit of D. Brooks Cowles (Doc. No. 101) in support of the instant motion. For the reasons that follow, Defendant's motion is DENIED.[1]

## I. FACTS AND BACKGROUND

Defendant Anthony L. Jinwright (hereinafter, "Defendant") has been employed as the senior pastor at Greater Salem Church ("GSC"), located in Charlotte, North Carolina, since before 2002. Defendant owns and operates A.L. JINWRIGHT Funeral Services and is the founder of A.L. Jinwright Ministries. Defendant Harriet P. Jinwright, who is not a party to the instant motion, has been employed by GSC since before 2002. Mrs. Jinwright also served as an officer of and was responsible for business finances for A.L. JINWRIGHT Funeral Services.

---

[1] The Court finds that oral argument is unnecessary because the facts and legal contentions are adequately presented in the materials and evidentiary record before the Court and argument would not aid in the decisional process.

On May 3, 2010, following a four-week long trial, a jury convicted Defendant of conspiracy to defraud the United States Internal Revenue Service ("IRS"), six counts of tax evasion for the years 2002-2007, and six counts of filing a false tax return during the 2002-2007 period. The jury acquitted Defendant on five counts of mail fraud related to the loan applications for the lease of several vehicles.[2]

Immediately following the jury's verdict, the Government moved for revocation of Defendant's bond and requested he be detained pending sentencing. Defense counsel objected, arguing that taking Defendant into custody would not only "burden the taxpayers," but would also deprive Defendant of an opportunity to work on business matters and impair his ability to make payments on the taxes the jury has found he owes. The Court rejected Defendant's arguments and stated that although the Court did not believe Defendant to be a flight risk, Defendant posed a risk to the economic safety of the community, particularly because Defendant's crimes involved manipulating the financial operations of the church where he worked.

The Court granted the Government's motion and ordered Defendant be taken into custody of the United States Marshal Service. The Government did not request co-defendant Harriet Jinwright be detained pending sentencing, and the Court allowed her to remain on bond. Defendant now moves for release on bond pending sentencing pursuant to 18 U.S.C. § 3143.

---

[2]The jury also convicted co-defendant Harriet Jinwright of conspiracy to defraud the IRS and three counts of tax evasion for the years 2005-2007, but found her not guilty of three counts of tax evasion for the years 2002-2004 and six counts of filing a false tax return.

## II. ANALYSIS

### A. Applicable Standard

Under 18 U.S.C. § 3143(a)(1), the sentencing judge "shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ." Section 3143(a)(1) describes the statutory presumption in favor of detention. The burden falls on Defendant to demonstrate by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of others or the community. Fed. R. Crim. P. 46(c); see also United States v. Thompson, 2008 WL 4460204, at *1 (W.D. Va. 2008) (citing S.Rep. No. 98-225, at 27 (1983) (reporting on revision of Bail Reform Act) ("The committee intends that in overcoming the presumption in favor of detention the burden of proof rests with the defendant."); United States v. Vance, 851 F.2d 166, 168 (6th Cir. 1988) (finding that "defendant must present 'clear and convincing evidence' that he does not 'pose a danger to the safety of any other person or the community' after conviction")). Even if a defendant proffers sufficient evidence tending to rebut this presumption, "the presumption still remains a factor to be considered by the Court in evaluating whether Defendant should be detained." United States v. Granger, 2006 WL 1303150, at *1 n.1 (E.D. Va. 2006) (citing United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991) (holding that "rebutted presumption retains evidentiary weight")).

The gravamen of Defendant's motion is two-fold: (1) economic danger is not a proper basis for detention under 18 U.S.C. § 3143(a)(1); and (2) even if economic danger may be used to justify detention under 18 U.S.C. § 3143(a)(1), this Court should release Defendant pending sentencing

because he is not a flight risk and the Court's imposition of supervisory conditions would ameliorate Defendant's economic threat to the community. The Court will address these arguments in turn.

**B. "Danger to the safety of any other person or the community" under the Bail Reform Act**

Defendant argues, and the Court agrees, that he does not appear to pose a threat to the physical safety of the community. Instead, the Court has found that allowing Defendant to remain on bond after being found guilty of thirteen financial crimes poses a risk to the community's economic safety. Defendant submits that the term "safety" under the Bail Reform Act includes only physical safety, and, by seeking to ensure the public's economic safety, the Court impermissibly expands the plain meaning of the statute.[3]

Defendant relies on the case of United States v. Salerno, 481 U.S. 739 (1987), and argues that in Salerno, the Supreme Court interpreted "safety" within the context of precedents restricted to physical safety of persons, not risks to their economic security. Defendant attempts to stretch the analysis in Salerno to suggest that because the Supreme Court only discussed cases involving danger to the physical safety of persons, the Supreme Court implicitly rejected the notion that "safety" under the Bail Reform Act can include a threat to the pecuniary safety of the community.

Defendant's reliance on Salerno is misplaced. That portion of the Salerno case upon which Defendant relies considered a completely separate and distinguishable issue from the case at bar (namely, whether the specific portion of the Bail Reform Act concerning pretrial detention violates the Due Process Clause of the Fifth Amendment to the Constitution). Salerno never addressed

---

[3]Interpretation of the statute's phrase "pose a danger to the safety of any other person or the community" requires consideration of the individual terms "danger" and "safety." Whether these terms include "economic safety" or "economic danger" is of no consequence to the Court's ruling because both terms could be modified interchangeably by the term "economic" or "physical" (yet, notably, Congress has not included either of these terms in the statute). It is the statute's phrase as a whole and whether it encompasses protection for the community from defendants who commit pecuniary crimes that is of utmost importance.

-4-

whether the term "safety" as used in the Bail Reform Act is limited to physical safety, nor did the case examine–much less reject–whether the Bail Reform Act encompasses protection of the public from economic harm. Neither the majority nor the dissents in that case distinguish between the "physical" or "economic" safety of the community. These terms are absent from the opinion, and the Court simply cannot agree with Defendant's argument that the Supreme Court's omission of any discussion concerning economic safety provides conclusive authority on the issue now before this Court. Even a broad reading of Salerno does not preclude a court from deciding that an economic danger provides a proper basis for detention under 18 U.S.C. § 3143(a)(1).

Instead, ample authority suggests to the contrary.[4] In United States v. Reynolds, the Ninth Circuit denied the defendant's motion for bail pending appeal because the defendant had failed to show by clear and convincing evidence that he did not constitute an economic danger to the community. 956 F.2d 192 (9th Cir. 1992). In that case, the court held that "danger may, at least in some cases, encompass pecuniary or economic harm." Id. at 192-93 (citing United States v. Provenzano, 605 F.2d 85, 95 (3rd Cir. 1979) (danger not limited to physical harm; the concept includes the opportunity to exercise a substantial and corrupting influence within a labor union); United States v. Parr, 399 F. Supp. 883, 888 (W.D. Tex. 1975) (pecuniary harm)); see also United States v. Moss, 522 F. Supp. 1033, 1035 (E.D. Pa. 1981) ("It is generally agreed, of course, that a

---

[4]The Court acknowledges that some of the cases cited herein involve pretrial detention or bail pending appeal, both of which involve different portions of the Bail Reform Act than the case at bar. Compare 18 U.S.C. § 3142 (release or detention of a defendant pending trial); 18 U.S.C. § 3143(b) (release or detention pending appeal by the defendant), with 18 U.S.C. § 3143(a) (release or detention pending sentence). Although the burden of proof and standard may differ in the context of those types of detention, thus sometimes resulting in different outcomes for the defendants in the cases that follow, "bail decisions are made pursuant to the Bail Reform Act, and the terms used should be given the same meaning." United States v. Madoff, 586 F. Supp. 2d 240, 252 n.10 (S.D.N.Y. 2009). Defendant recognized this principle in its citation to the Salerno case discussed above, noting that "[t]he phrase 'safety of any other person or the community' can only mean the same thing in both sections." (Reply to Gov't Response, Doc. No. 100, p. 2).

[c]ourt may refuse bail on the ground that a defendant poses a threat to the community even though the threat is pecuniary rather than physical."), aff'd 688 F.2d 826 (3rd Cir. 1982); United States v. Miranda, 442 F. Supp. 786, 792 (S.D. Fla. 1977) ("First, it is beyond dispute that the criterion of 'danger to the community,' which is an explicit component of the Bail Reform Act, is not limited to the potential for doing physical harm.") (citing United States v. Louie, 289 F. Supp. 850 (D.C. Cal. 1968)).

Recently, in the case of United States v. Madoff, the District Court for the Southern District of New York faced the issue of pretrial detention for the well-publicized defendant and looked to both case law and legislative history for guidance concerning the treatment of "danger" under the Bail Reform Act. 586 F. Supp. 2d 240, 251-53 (S.D.N.Y. 2009) (citations omitted). After an exhaustive review of the relevant authority, the court recognized "there is jurisprudence to support the consideration of economic harm in the context of detention to protect the safety of the community." Id. at 253.[5]

This District has explicitly considered whether a defendant may be detained prior to sentencing if he poses a threat of economic harm to the community. United States v. Griffin, No. 2:10-cr-003, 2010 WL 1049228, at *2 (W.D.N.C. Mar. 18, 2010). In Griffin, the defendant pled guilty to bank fraud, aggravated identity theft, access device fraud, and mail fraud. Id. at *1. Citing to prior convictions of financial crimes that had created an economic danger to the community, the Honorable Magistrate Judge Dennis Howell acknowledged that the defendant was not a physical

---

[5] The Madoff court suggested economic harm be considered along with risk of flight, and in that case, granted the defendant pretrial release. Without deciding that economic harm must be considered together with the likelihood that a defendant will flee, this Court, as described below, is reconsidering its earlier ruling on Defendant's flight risk. See also United States v. Madoff, 316 Fed. Appx. 58, 59 (2d Cir. 2009) (denying the defendant bail pending sentencing because he posed a danger to the pecuniary safety of the community and because the defendant had failed to show by clear and convincing evidence that he is not likely to flee).

threat but an economic threat. Id. The court denied the defendant's pre-sentencing release, in part, because of the defendant's ability to perpetrate further financial harm while on release. Id. at *2.

In another case out of this District, United States v. Masters, 730 F. Supp. 686 (W.D.N.C. 1990), the Honorable Robert D. Potter addressed whether a defendant who had been convicted of twenty-four (24) counts for his participation in a conspiracy to promote bogus tax shelters should be released on bail post-sentencing and pending his appeal. The court recognized the need to protect the community from the economic threat posed by the defendant:

> In this case, the Court is concerned about the safety of the community if Defendant is released. The unrefuted evidence presented at the sentencing hearing indicates Defendant participated in questionable investment schemes during the pendency of the serious charges in this case. Defendant asserts that he does not pose a *physical* danger to the community. However, the Court believes it must also consider the danger of a person who continues to participate in possibly fraudulent schemes. See United States v. Malquist, 619 F. Supp. 875, 878 (D. Mont. 1985) (non-violent, tax protester defendant denied release pending appeal under § 3143(b) when he demonstrated a militant lack of responsibility). Frankly, the Court believes Defendant is an unrepentent [sic] con-artist who will continue to prey on any person gullible enough to listen to his sales talk. Nothing short of post-conviction incarceration will ensure the safety of the community.

Masters, 730 F. Supp. at 689.

This case law, which spans several decades, as well as several circuits, makes clear that economic danger provides an adequate basis for detention under 18 U.S.C. § 3143(a)(1).

**C.     Clear and convincing evidence to overcome the presumption of detention**

Having concluded 18 U.S.C. § 3143(a) encompasses the pecuniary safety of the community, the Court now turns to whether Defendant has shown by clear and convincing evidence that he does not pose this type of threat.

1. **Economic Threat**

Defendant summarily argues that he does not pose a danger to the economic safety of the community but fails to point to sufficient evidence to support this assertion. This assertion, without more, certainly falls short of satisfying the heavy burden of proof set forth in the statute. Instead, Defendant's arguments center more on a set of conditions of release that Defendant contends would shield the community from any potential risk he may pose. These conditions include requirements that Defendant: (1) resign from all roles relating to financial decisions of GSC; (2) accept no funds greater than $300,000 from GSC; (3) abstain from solicitation of contributions from GSC members while on GSC property or using GSC resources; (4) submit to continued verification by the Probation Office confirming that Defendant is not receiving improper funds; and (5) resign from membership on GSC's Board of Directors. In sum, Defendant offers his assurances that he has learned his lesson and invites the Court, the Government, and the Probation Office to closely monitor his financial activities, as well as those of the church.

Without addressing the First Amendment issues Defendant's proposition invokes, the Court finds that Defendant's proposed assurances and conditions are inadequate to overcome the presumption of detention. Defendant spent nearly three days offering testimony to the jury that he had neither any knowledge of nor involvement in a conspiracy to commit tax fraud and tax evasion. In convicting Defendant, the jury appeared to find Defendant not credible and rejected the majority of his testimony. Additionally, Defendant absconded money from the IRS for years, which translates to experience in concealing financial resources that a periodic audit from the Probation Office might not uncover. Since Defendant is now in the position of having been found guilty of certain crimes, the Court is unpersuaded that Defendant's offer to remove himself from financial

dealings at GSC provides clear and convincing evidence that he would no longer pose a danger to the economic safety of the community.

Next, Defendant argues that his release would be an economic benefit to the taxpayers because it would not only relieve the expense of his detention, but it would also allow him an opportunity to get his business affairs in order so that he can continue repaying his debt to the IRS. The Court finds it disingenuous that Defendant argues in his written pleadings, "[t]he government obviously needs all the tax revenue it can get, since it is running at a substantial deficit." While the amount owed by Defendant to the IRS is substantial, it will hardly make a dent in the national debt. This argument is meritless.

Secondly, turning to Defendant's contention that his release would more easily facilitate the sale of his funeral home business, the Court has reviewed the affidavit of D. Brooks Cowles submitted in support of the motion. (Doc. No. 101.) While the Court understands the difficulties of conducting detailed discussions with potential buyers without being able to directly engage Defendant in those conversations, such hardship does not provide clear and convincing evidence to overcome his burden under 18 U.S.C. § 3143(a)(1). Defendant's ability to increase his income is not a sufficient basis to permit his pre-sentence release. See United States v. Engle, 592 F.3d 495, 504-05 (4th Cir. 2010) (reversing district court's decision not to sentence the defendant to imprisonment because of his earning capacity and noting that the ability of a rich tax-evader to pay restitution should not allow him to avoid incarceration) (citing United States v. Bolden. 889 F.2d 1336, 1340 (4th Cir. 1989) ("[W]e do not think that the economic desirability of attempting to preserve [the defendant's] job so as to enable him to make restitution warrants a downward adjustment from the guidelines.") (other citations omitted)).

While in Mecklenburg County Jail, Defendant has the ability to make periodic phone calls, receive periodic visitors, and send and receive mail. Defendant's detention does not isolate him from communication with the outside world. This same conclusion holds true for Defendant's ability to liquidate his other assets. Mrs. Jinwright, whom the jury found to have also participated–to some degree–in the family's financial dealings, has not been detained and provides an alternative resource for Defendant to use in marketing and managing these assets.

**2. Risk of flight**

Although the Court stated in open court that it did not believe Defendant to be a flight risk, the Court, upon the argument submitted by the Government in response to Defendant's motion and addressed in Defendant's reply, will revisit the issue. The Government argues that Defendant poses a significant flight risk because he (1) has the financial resources to flee, (2) has extensively traveled internationally, and (3) faces a drastic change of lifestyle upon his commitment to the United States Bureau of Prisons. See, e.g., United States v. Miell, No. CR07-101-MWB, 2009 WL 1956451, at *2 (N.D. Iowa 2009) (ruling that defendant's conviction of tax evasion, coupled with his available wealth to finance flight, presents substantial risk that he is likely to flee upon release). Again, Defendant must present clear and convincing evidence that he is *not* likely to flee. Griffin, 2010 WL 1049228, at *2.

Here, considering the evidence the Court heard at trial, Defendant has substantial financial resources to flee. Over the past several years, Defendant has traveled internationally to the Caribbean and South Africa. It is possible that he has established ties overseas that could facilitate his flight from the United States. Moreover, Defendant is fifty-six years old and faces a significant sentence. Defendant argues that he does not pose a flight risk because he has surrendered his passport and shown no desire to flee. Defendant also cites to Defendant's presence throughout all

proceedings in this matter, stating that nothing has changed about his character and willingness to submit to the decisions of the Court. (Reply to Gov't Response, Doc. No. 100, p. 1.) Something has changed since trial; Defendant is no longer presumed innocent but is guilty of the counts of conviction. His legal status has changed, increasing his incentive to flee.

Based on the foregoing circumstances, the Court reconsiders its earlier ruling and finds that Defendant has not shown clear and convincing evidence the he does not pose a flight risk, which precludes pre-sentencing release.

### III. Conclusion

Economic harm is certainly a danger from which this Court can protect the community and detain Defendant pursuant to 18 U.S.C. § 3163(a)(1). Defendant has failed to satisfy his burden to show by clear and convincing evidence that he is not likely to flee or that he does not pose a danger to the economic safety of the community.

IT IS THEREFORE ORDERED that Defendant's Motion for Release on Bond (Doc. No. 98) is DENIED.

IT IS SO ORDERED.

Signed: July 23, 2010

Frank D. Whitney
United States District Judge